UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

ALLAN MARK YASSEN,

                    Plaintiff,

v.                                                    Case No.  5:08-cv-509-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                    Defendant.
_____/

## ORDER

Plaintiff appeals from a final decision of the Commissioner of Social Security

("the Commissioner") denying his applications for a period of disability, disability

insurance benefits and supplemental security income. (Doc. 1.) The Commissioner has

answered (Doc. 8), and both parties have filed briefs outlining their respective positions.

(Docs. 12 & 13.)  For the reasons discussed below, the Commissioner's decision is due

to be **AFFIRMED** under sentence four of 42 U.S.C. §405(g).

## I.  PROCEDURAL HISTORY

In June 2005, Plaintiff filed applications for a period of disability, disability

insurance benefits and supplemental security income, alleging a disability onset date of

April 10, 2005. (R. 89-93.)  Plaintiff's applications were denied initially and upon

reconsideration. (R. 33-46, 282-83.)   Thereafter, Plaintiff timely pursued his

administrative remedies available before the Commissioner and requested a hearing

before an Administrative Law Judge ("ALJ") (R. 40.) The ALJ conducted Plaintiff's

administrative hearing on December 5, 2006. (R. 284-327.)  On May 2, 2007, the ALJ

issued a decision unfavorable to Plaintiff. (R. 24-32.)  In September 2007, the Appeals

Council granted Plaintiff's request for review, vacated the ALJ's decision and remanded

the case for further administrative proceedings. (R. 85-87.)

After a supplemental hearing on March 6, 2008 (R. 328-47), the ALJ issued a

decision unfavorable to Plaintiff on June 24, 2008. (R. 11-20.)  Plaintiff's request for

review of the hearing decision by the Social Security Administration's Office of Hearings

and Appeals was denied.  (R. 4-6, 7.)  Plaintiff then appealed to this Court. (Doc. 1.)

## II. <u>STANDARD OF REVIEW</u>

The Commissioner's findings of fact are conclusive if supported by substantial

evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do

more than merely create a suspicion of the existence of a fact, and must include such

relevant evidence as a reasonable person would accept as adequate to support the

conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the

district court will affirm, even if the reviewer would have reached a contrary result as

finder of fact, and even if the reviewer finds that the evidence preponderates against the

Commissioner's decision.[3] The district court must view the evidence as a whole, taking

---

[1] <u>See</u> 42 U.S.C. § 405(g).

[2] <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing <u>Walden v. Schweiker</u>, 672 F.2d 835, 838 (11th Cir. 1982) and <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* <u>Edwards v. Sullivan</u>, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] <u>Edwards</u>, 937 F.2d at 584 n.3; <u>Barnes v. Sullivan</u>, 932 F.2d 1356, 1358 (11th Cir. 1991).

into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5] The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, she is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does

---

[4] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. See Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[11] Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[12] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when

---

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). See also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[16] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

the claimant cannot perform a full range of employment at the appropriate level of exertion.[17] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[21]

## III.  SUMMARY OF THE RECORD EVIDENCE

At the time the ALJ issued his decision, Plaintiff was forty six (46) years old.  (R. 331.)  He has an eleventh-grade education (R. 170, 298) and has previous work experience as a bindery clerk, delivery clerk, server and short-haul truck driver. (R. 128.) Plaintiff contends that he has been unable to work since April 10, 2005 due to an affective disorder, an anxiety disorder and violent outbursts. (R. 43, 89, 334.)

---

[17] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

[18] Walker at 1003.

[19] Wolfe at 1077-78.

[20] See id.

[21] See Doughty at 1278 n.2.

Since as early as 1997, Plaintiff has been treated on an outpatient basis for anxiety, panic attacks and depression. (R. 144-60, 334.) In May/June 2005, Plaintiff was admitted to The Centers for suicidal ideation and panic attacks/depression. (R. 180-89, 310-11.) Plaintiff admitted a history of illegal drug use and began outpatient substance abuse treatment. (R. 161-68.) By August and September 2005, Plaintiff was making good progress in his substance abuse treatment and was assessed GAF scores of 51-52. (R. 161-62.)

Plaintiff was seen by Doyle C. Phillips, M.D., a family practitioner, on March 7, 2005 and August 1, 2005 for a GI bleed. (R. 202, 205, 207.) On October 31, 2005, Dr. Phillips diagnosed anxiety–panic disorder, depression and possible bipolar disorder and made a psychiatric referral. (R. 244.) However, in January and June 2006, Plaintiff's main concern was high cholesterol and Dr. Phillips reported that Plaintiff was oriented x3, had good recent and remote memory, appropriate mood and good insight. (R. 242-43).

On November 7, 2006, Dr. Phillips diagnosed panic disorder, but his findings once again showed that Plaintiff was oriented x3, with good recent and remote memory, appropriate mood, and good insight. (R. 240.) Nevertheless, that same day – despite diagnosing a mental impairment on only two out of Plaintiff's six visits, and making normal findings on four of those visits – Dr. Phillips wrote a letter to "[w]hom it may concern" stating that Plaintiff has been a patient since March 7, 2005 and that he has been diagnosed with generalized anxiety disorder and been on chronic medications for the same. (R. 236.) Dr. Phillips further noted that the "condition and the medical therapy has caused him to lose employment in the past, and has prevented him from

6

holding gainful employment since April 2005." He also noted that Plaintiff cannot afford

a follow-up with psychiatry and Plaintiff's "condition will not improve, and he will need

this medication on a permanent basis."

On August 5, 2005, a non-examining state agency psychiatrist, Alejandro F.

Vergara, M.D. completed a Mental RFC Assessment finding that Plaintiff was

moderately limited in his ability to: carry out detailed instructions; maintain attention and

concentration for extended periods; work in coordination with or proximity of others

without being distracted by them; complete a normal workday and workweek without

interruptions from psychologically based symptoms and to perform at a consistent pace

without an unreasonable number and length of rest periods; accept instructions and

respond appropriately to criticism from supervisors; and set realistic goals or make

plans independently of others. (R. 191-94.) Dr. Vergara noted that Plaintiff "appears to

retain mental capabilities, necessary to do simple, repetitive type tasks and

assignments, more so, if in a setting in which he would not be exposed to much social

interaction." (R. 193.) Dr. Vergara also completed a Psychiatric Review Technique in

which he found that Plaintiff had moderate difficulties in maintaining social functioning;

moderate difficulties in maintaining concentration, persistence, or pace; and one or two

episodes of decompensation, each of extended duration. (R. 195-200.)

On October 5, 2005, a second non-examining state agency psychologist, Steven

L. Wise, Psy.D. completed a Mental RFC Assessment finding that Plaintiff was

moderately limited in his ability to carry out detailed instruction; maintain attention and

concentration for extended periods; and interact appropriately with the general public.

(R. 208-11.) Dr. Wise also completed a Psychiatric Review Technique finding moderate

difficulties in social functioning and one or two episodes of decompensation, each of extended duration. (R. 212-25.)

At the first hearing on December 5, 2006 (R. 284-327), Plaintiff testified that he is unable to work due to his panic attacks.  Plaintiff testified that his medication helped immensely but that he still has panic attacks two to three times a week that last between 10-15 minutes. (R. 311-12, 314.)  Plaintiff testified that the medication makes him shaky, unstable, and unsteady. (R. 316.) During a panic attack, Plaintiff becomes very withdrawn, has trouble breathing, gets the shakes, sweats, cannot talk to people and has violent outbursts. (R. 312, 315.) Plaintiff testified that he has trouble getting along with people and doing day to day functions. (R. 313.)  Plaintiff reported that his father no longer allowed him to drive because he had a panic attack while driving. (R. 313.) Plaintiff testified that he has anxiety and stress related to significant child support arrearages. (R. 318.) Plaintiff's brother testified that he attempted to have his brother work for him but that he was unable to do the work because of his panic attacks and side effects from his medication. (R. 322-24.)

In February 2007, Plaintiff was seen by K. Kirmani, M.D. for a consultative psychiatric evaluation. (R. 253-55.)  Dr. Kirmani diagnosed depressive disorder, NOS, by history and opined that "[t]here may be anxiety and depressive factors based on his comments."  Dr. Kirmani completed a "Medical Source Statement of Ability To Do Work-Related Activities (Mental) form and opined that Plaintiff has no limitations in understanding, remembering and carrying out instructions or responding appropriately to supervision, co-workers, and work pressures. (R. 256-58.)

***Evidence Submitted To The Appeals Council and After Remand***

At the supplemental hearing on March 6, 2007, Plaintiff reiterated that he was unable to work due to his panic attacks, violent outbursts and trouble dealing with people. (R. 329-47.) He testified that he was experiencing panic attacks once a week, lasting 10-15 minutes, during which he gets shaky, has problems breathing and often results in violent outbursts. (R. 334-35.) Plaintiff testified that he cannot afford psychiatric care. (R. 336.) Plaintiff's father testified that Plaintiff has outbursts a couple times a week unless he takes his medication. (R. 339.) He further testified that Plaintiff does not "function too well" after taking his pills. (R. 340.)

On remand from the Appeals Council, the ALJ also considered updated records from Dr. Phillips, as well as the consultative report by Dr. Poetter. In treatment notes from Dr. Phillips dated April 9, 2007 (R. 280); July 27, 2007 (R. 279), October 31, 2007 (R. 278), Dr. Phillips noted that Plaintiff had a good recent/remote memory, an appropriate mood, and good insight. (R. 278-80.) During this period, while Dr. Phillips continued to prescribe Xanax, he noted that Plaintiff was doing well on his medications and he did not diagnose any mental impairments. Likewise, on January 24, 2008, Dr. Phillip's did not note any mental limitations and reported that Xanax "works well." (R. 277.)

Only one month later, on February 29, 2008, Dr. Phillips completed a Mental Disorders Disability Evaluation For Social Security in which he evaluated Plaintiff under the listings of impairments for an Anxiety-Related Disorder (12.06)(R. 271-76.). Dr. Phillips noted that Plaintiff has severe generalized anxiety disorder and panic disorder, that his symptoms are ameliorated but not controlled by medications, and that the high

doses of anti-anxiety medication interfere with his performance/job function.   Dr.

Phillips opined that Plaintiff had moderate restriction of activities of daily living; marked

difficulties in maintaining social functioning; extreme difficulties in maintaining

concentration, persistence or pace; and 4 or more repeated episodes of

decompensation, each of extended duration.  As for work-related limitations, Dr. Phillips

found that Plaintiff has extreme limitations in his ability to complete a normal

workday/workweek without interruptions from psychologically based symptoms and

perform at a consistent pace without an unreasonable number and length of rest

periods and perform activities within a schedule, maintain regular attendance and be

punctual within customary tolerances; marked limitations in the ability to make simple

work related decisions, accept instructions and respond appropriately to criticism from

supervisors, get along with co-workers or peers without unduly distracting them or

exhibiting behavioral extremes, and set realistic goals or to make plans independently of

others; and moderate limitations in the ability to make judgments based on simple work

related decisions, remember locations and/or work like procedures, and tolerate and

interact appropriately with the general public.

In January 2008, Plaintiff was seen by Rodney A. Poetter, Ph.D. for a

consultative psychological evaluation who administered a clinical interview with mental

status examination and battery of relevant psychological tests. (R. 266-70.)   On

examination, Dr. Poetter noted that Plaintiff's performance on mental control exercises

was inconsistent with any concentration deficits.  He further noted that mental status

examination was suggestive of an alienated, isolative individual with some unusual

thought processes, but he found no indication of an underlying thought disorder. Dr.

Poetter also noted that test results revealed average intelligence, reading skills, judgment and common sense reasoning skills.  Plaintiff also scored in the severe range on two objective inventories measuring depression and anxiety. Dr. Poetter's diagnostic impression was panic disorder without agoraphobia; major depressive disorder, severe without psychotic features; polysubstance dependence, including anxiolytics and nicotine; personality disorder NOS, with cluster A personality traits; scoliosis, hypertension, degenerative disc disease; problems associated with lack of employability; and health insurance; and current GAF = 45.

Dr. Poetter completed a Mental Disorders Disability Evaluation For Social Security in which he evaluated Plaintiff under the listings of impairments for an Affective Disorder (12.04), Anxiety-Related Disorder (12.06), and Personality Disorder (12.08.) (R. 259-65.) Dr. Poetter opined that Plaintiff had moderate restriction of activities of daily living; marked difficulties in maintaining social functioning; and marked difficulties in maintaining concentration, persistence or pace.  Finally, as to work-related limitations, Dr. Poetter opined that Plaintiff had marked limitations in his ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; complete a normal workday/workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and to respond appropriately to criticism from supervisors; and moderate limitations in his ability to tolerate and interact appropriately with the general public and to get along with co-workers or peers.

In his review of the record, including Plaintiff's testimony and the medical records from several health care providers, the ALJ determined that Plaintiff has an affective disorder and an anxiety disorder. (R. 13.) However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4. (R. 13-14.)

The ALJ then found that Plaintiff retained the RFC to perform work at the light exertional level, with the ability to lift/carry 10 pounds frequently and 20 occasionally, to stand/sit 6 hours each, performing pushing/pulling with lower extremities, stooping, crouching, crawling occasionally, avoiding pollutants, extreme temperatures, climbing, hazards, moving machinery, heights, and ladders; but with the following nonexertional limitations: that the claimant has the residual functional capacity of an individual, who would require work which is low stress, simple unskilled, with one, two or three step instructions, performing work in settings in which he would not be exposed to much social interaction with coworkers, the public, or supervisors, for a total of 6 hours in an 8-hour workday; who has depression, and anxiety disorders which affect his ability to concentrate upon complex or detailed tasks but would remain capable of understanding, remembering and carrying out simple job instructions. (R. 14-18.) After concluding that Plaintiff could not perform his past relevant work, the ALJ found that he could perform work that exists in significant numbers in the national economy. (R. 19-20.) Thus, the ALJ concluded that Plaintiff was not disabled. (Id.)

# IV. <u>DISCUSSION</u>

## A.    The ALJ Complied With The Appeals Council's Remand Order

Plaintiff contends that the ALJ failed to comply with the Appeals Council's

September 21, 2007 Remand Order.  Specifically, Plaintiff argues that the ALJ was

required to re-contact his medical sources and obtain updated medical records and a

consultative examination.  However, the Remand Order states:

> As appropriate, the [ALJ] will obtain updated medical records from the claimant's treating and other medical sources, including clinical   findings, test results, and medical source statements about what the claimant can do despite the impairments. As the claimant is represented, the representative may be enlisted as necessary in securing the additional evidence.  If the evidence does not adequately clarify the record, the Administrative Law Judge will recontact the medical source(s) for further information.
> . . .
>
> If the additional evidence does not clearly depict the claimant's limitations, the [ALJ] will obtain a consultative mental status examination, including a medical source statement about what the claimant can do despite the impairments.
>
> . . .
>
> Further, if necessary, the [ALJ] will obtain evidence from a medical expert to clarify the nature and severity of the claimant's impairments.
>
> R. 86.

Accordingly, there was no requirement for the ALJ to obtain medical records;

rather, he was directed to obtain records "as appropriate."  On at least two occasions,

the ALJ asked Plaintiff to submit any updated medical evidence prior to the remand

hearing.   (R. 65-69, 74-75.)  The ALJ also gave Plaintiff's counsel notice that he should

submit any additional evidence prior to the hearing. (R. 58-60.)   Accordingly, Plaintiff

submitted, and the ALJ admitted into evidence Dr. Phillips's updated medical records

and February 2008 opinion (R. 271-81), and Dr. Poetter's January 23, 2008 examination and opinion. (R. 266-70.) Nevertheless, Plaintiff now contends that the ALJ failed to obtain some unidentified updated medical records.

Plaintiff fails to explain why the ALJ should have ordered a consultative examination in view of the fact that Dr. Poetter's January 2008 consultative examination and opinion was submitted. Likewise, Plaintiff fails to explain why the ALJ should have re-contacted Plaintiff's medical sources in view of the fact that Plaintiff submitted the updated medical records and opinion from his treating physician, Dr. Phillips. That the ALJ accorded lesser weight to the opinions of Dr. Poetter and Dr. Phillips because they were inconsistent with the record does not mean that the additional evidence did not clearly depict Dr. Poetter and Dr. Phillips's opinion as to Plaintiff's limitations. Nor does it mean that the record contained a conflict or ambiguity that needed to be resolved. Indeed, the ALJ found that the new medical evidence "did not provide any new or material information that would alter any findings about the claimant's residual functional capacity." (R. 17.) Accordingly, the Court concludes that the ALJ properly complied with the Appeals Council's Remand Order and there was no error in failing to obtain another consultative examination.

### B.      The ALJ properly considered the opinions of Dr. Philips

Plaintiff argues that the ALJ failed to provide good cause for his rejection of the opinion of Dr. Phillips, his treating physician. On February 29, 2008, Dr. Phillips completed a medical source statement in which he opined that Plaintiff had several "marked" and "extreme" mental limitations. (R. 271-76.) Although the ALJ evaluated Dr. Phillips opinion, he properly declined to accord it substantial weight because it was

14

inconsistent with the other evidence of record, including Dr. Phillips' own treatment notes.

It is well-established that substantial or considerable weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless "good cause" is shown to the contrary.[22]  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.[23]   However, the ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.[24]  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.[25]

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of the treatment

---

[22] Crawford v. Commissioner of Social Security, 363 F. 3d 1155, 1159 (11th Cir. 2004) (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.1997)) ("We have found 'good cause' to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. We have also found good cause where the doctors' opinions were conclusory or inconsistent with their medical records.").  See also Edwards v. Sullivan, 937 F.2d 580, 583-584 (11th Cir. 1991); Sabo v. Commissioner of Social Security, 955 F. Supp. 1456, 1462 (M.D. Fla.1996); 20 C.F.R. § 404.1527(d).

[23] 20 C.F.R. § 404.1527(d)(2).

[24] Edwards, 937 F.2d at 584 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).

[25] Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir.1986); see also Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir.1987).

relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record a whole; (5) specialization in the medical issues at issue; and (6) other factors which tend to support or contradict the opinion.[26]  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.[27]

Upon a review of the ALJ's decision, as well as an examination of the medical records at issue, the Court finds that the ALJ properly considered the opinion of Dr. Phillips as a treating physician.  The ALJ articulated good cause for discounting Dr. Phillip's February 2008 assessment regarding Plaintiff's mental limitations.

The records show that Dr. Phillips, who is a family physician, saw Plaintiff on ten occasions from March 2005 through January 2008. (R. 202-07, 236-52, 277-80.)  In June 2005, Plaintiff was admitted to The Centers for suicidal ideation and panic attacks/depression. (R. 161-90.)  However, by August and September 2005, Plaintiff was making good progress in his substance abuse treatment and was assessed GAF scores of 51-52. (R. 161-62.)

Plaintiff was seen by Dr. Phillips on August 1, 2005 related to his GI bleed. (R. 202, 205).  On October 31, 2005, Dr. Phillips diagnosed anxiety–panic disorder, depression and possible bipolar disorder and made a psychiatric referral. (R. 244).  However, in January and June 2006, Plaintiff's main concern was high cholesterol and

---

[26] 20 C.F.R. § 404.1527(d).

[27] Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir.1984); see also 20 C.F.R. § 404.1527(d)(2).

16

Dr. Phillips reported that Plaintiff was oriented x3, had good recent and remote memory, appropriate mood and good insight.  (R. 242-43).

On November 7, 2006, Dr. Phillips diagnosed panic disorder, but his findings once again showed that Plaintiff was oriented x3, with good recent and remote memory, appropriate mood, and good insight. (R. 240.)  Nevertheless, that same day – despite diagnosing a mental impairment on only two out of Plaintiff's six visits, and making normal findings on four of those visits – Dr. Phillips wrote a letter stating that Plaintiff's generalized anxiety disorder has prevented him from holding gainful employment since April 2005.  This extreme opinion was not supported by Dr. Phillips's treatment notes. Moreover,  the issue of whether an individual is disabled or unable to work is reserved to the Commissioner and opinions on such issues are not entitled to controlling weight.[28]

The ALJ correctly observed that during the next three "routine encounters" dated April 9, 2007, July 27, 2007 and October 31, 2007, Dr. Phillips noted that Plaintiff had a good recent/remote memory, an appropriate mood, and good insight.  (R. 278-80.) During this period, while Dr. Phillips continued to prescribe Xanax, he noted that Plaintiff was doing well on his medications and he did not diagnose any mental impairments. Likewise, on January 24, 2008, Dr. Phillip's did not note any mental limitations and reported that Xanax "works well." (R. 277.)  Only one month later, on February 29, 2008 - and without any intervening reported change in condition - Dr. Phillips offered an opinion, not evidenced in his progress notes or prior treatment records, that Plaintiff had several "marked" and "extreme" mental limitations. (R. 275-76.)  Accordingly, the Court

---

[28] See 20 C.F.R. §404.1527(e); SSR 96-5p; Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997.)

concludes that the ALJ's decision to discount the opinion of Dr. Phillips is supported by substantial record evidence and was not error.

### C.      The ALJ properly considered the opinion of Dr. Poetter

Plaintiff also argues that the ALJ erred in his consideration of the opinion of Dr. Poetter, an examining psychologist.  On January 22, 2008, Dr. Poetter examined Plaintiff at the request of Plaintiff's attorney and opined that he has several "marked" mental limitations. (R. 259-70.)   The ALJ considered Dr. Poetter's opinion and did not accord "substantial evidentiary weight" to the assessment report. (R. 17.)

Because Dr. Poetter only evaluated Plaintiff on one occasion, his opinion is not entitled to the deference given to a treating physician – even though he administered tests and reviewed records.[29]  As discussed above with respect to Dr. Phillips, Dr. Poetter's opinions are inconsistent with the other medical evidence of record.  They also are inconsistent with Dr. Poetter's own examination results.  For example, while Dr. Poetter opined that Plaintiff had a "marked" limitation in maintaining concentration, persistence or pace (R. 264) he noted in his report that Plaintiff's mental status examination showed Plaintiff "performed mental control exercises quickly and without error, inconsistent with any concentration deficits." (R. 268.)   Dr. Poetter also found that Plaintiff had strong memory skills, performed his activities of daily living independently and he found no indication of an underlying thought disorder.  (R. 268-69.)  In addition, while Dr. Poetter opined that Plaintiff had a "marked" limitation in maintaining social

---

[29] See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987).

functioning (R. 264), he noted that Plaintiff was able to socialize with friends playing pool. (R. 268.)

Plaintiff contends that the ALJ improperly rejected the opinion of Dr. Poetter in favor of the opinion of Dr. Kirmani, another consultative psychiatrist, who examined Plaintiff on February 17, 2007.   The ALJ accorded "great evidentiary weight" to the opinion of Dr. Kirmani because it was consistent with the record as a whole. (R. 16-18.)

 On mental status exam, Dr. Kirmani found that Plaintiff was fully oriented and had an intact memory; a euthymic mood with full range of affect; a normal thought process with no delusions or hallucinations; adequate insight; and intact judgment. (R. 254.)  During the mental status exam by Dr. Kirmani Plaintiff did not manifest a psychotic reaction, there was no deterioration in personal habits and no impaired ability to relate to Dr. Kirmani, no trophic changes noted and no intellectual deterioration identified.   (R. 254-55.)  Plaintiff told Dr. Kirmani that he watched television for 5-6 hours a day and that his favorite programs related to poker, that he visits with his friends and gets along with his family members, neighbors, store clerks, friends, and doctors. (R. 253-54.) Based on Plaintiff's subjective reports and the examination results, Dr. Kirmani diagnosed a depressed disorder, not otherwise specified, by history and opined that Plaintiff has no limitations in understanding, remembering and carrying out instructions or responding appropriately to supervision, co-workers, and work pressures. (R. 256-58.)

The ALJ also considered the opinions of state agency psychiatrist, Dr. Vergara and state agency psychologist, Dr. Wise, both of whom found that Plaintiff had, at most, moderate mental limitations. (R. 15-16, 191-92, 199, 208-10.)  Dr. Vergara opined that

Plaintiff may have difficulty carrying out detailed instructions, sustaining concentration for extended periods of time, working in close proximity to others, and accepting instructions or criticism from supervisors but that Plaintiff appeared to retain the mental capability necessary to perform simple, repetitive tasks and assignments in a setting where he is not exposed to much social interaction. (R. 193.) Dr. Wise opined that although Plaintiff would do poorly in tasks requiring him to greet the general public, he was able to follow simple instructions, perform simple tasks, and perform routine tasks with limited social interaction. (R. 224.)

Thus, the opinions of Dr. Kirmani, Dr. Vergara and Dr. Wise are consistent with each other in that they did not find any marked or extreme limitations. These opinions are also consistent with the other evidence of record – i.e., the minimal findings in Dr. Phillips's treatment notes, as well as some of the relevant findings in Dr. Poetter's examination (as noted above). These opinions provide substantial evidence supporting the ALJ's RFC finding that Plaintiff can perform low stress, simple, unskilled work with 1-3 step instructions that do not require much social interaction with co-workers, the public, or supervisors. As such, the ALJ did not err by according these opinions greater weight than the extreme and unsupported opinions of Dr. Phillips and Dr. Poetter.

### D. The ALJ properly evaluated Plaintiff's credibility

Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's credibility. When a claimant seeks to establish his disability through his testimony of pain or other symptoms, the ALJ must apply the so-called "pain standard."[30]    The pain standard

---

[30] See Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002.)

requires that subjective testimony must be supported by two showings – (1) evidence of an underlying medical condition; and (2) either objective medical evidence confirming the severity of the alleged pain or that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.[31]

If the record shows that the claimant has "a medically determinable impairment [] that could reasonably be expected to produce [his] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the] symptoms so that [he] can determine how [the] symptoms limit [the claimant's] capacity for work."[32]  In making this evaluation, the ALJ considers all of the record evidence, including the objective medical evidence, the claimant's history, and statements by the claimants to his doctors.[33] The ALJ also considers factors such as the claimant's daily activities, the effectiveness and side effects of his medications, precipitating and aggravating factors, and other treatments and measures taken to relieve the symptoms.[34]

In this case the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that Plaintiff's statements concerning the intensity, duration and limiting effects of these symptoms were not entirely credible to the extent they were inconsistent with the RFC assessment.  Plaintiff testified that he could not perform any type of work activity due to

---

[31] See id.

[32] 20 C.F.R. §404.1529(c)(1); Adamo v. Commissioner of Social Security, 2010 WL 476691, *3 (11th Cir. 2010.)

[33] See  20 C.F.R. §404.1529(c)(1).

[34] See 20 C.F.R. §404.1529(c)(3).

his alleged mental limitations. The ALJ articulated several reasons supporting his finding that Plaintiff was not entirely credible.

First, the objective medical evidence and medical opinions of record provide substantial evidence to support the ALJ's finding that Plaintiff was not entirely credible. As discussed above, the opinions of Dr. Poetter and Dr. Phillips, while consistent with Plaintiff's subjective complaints, were not consistent with the objective medical evidence and, thus, were properly accorded lesser weight.  Moreover, the opinions of Dr. Kirmani, Dr. Vergara and Dr. Wise, as well as the minimal findings of Dr. Phillips and the fact that Plaintiff only underwent conservative treatment fully support the ALJ's credibility finding.

Plaintiff argues that the ALJ improperly cited Plaintiff's activities of daily living. While Plaintiff's admission that he participates in daily activities does not necessarily disqualify him from disability benefits that does not mean it is improper for the ALJ to consider a claimant's daily activities.[35] Here, the ALJ noted that Plaintiff's "essentially normal" activities of daily living – i.e., watching television, listening to the radio, shopping with his brother and preparing simple meals – were inconsistent with Plaintiff's testimony that he could not perform any type of work activity due to his alleged mental limitations. (R. 18.)

The ALJ also noted that Plaintiff was able to attend the hearing proceedings closely and fully, without any noted distractions; was able to respond to questions appropriately; lacked the general appearance of a person who might have been experiencing a prolonged or incapacitating disability; and there was no obvious

---

[35] Robinson v. Astrue, 2010 WL 582617, *4 (11th Cir. 2010.)

evidence of any significantly limiting mental or emotional problem demonstrated during the course of the hearing.  (R. 17-18.) Plaintiff contends that the ALJ improperly based his opinion on these personal observations at the hearing.  While an ALJ should not solely rely upon his own observations of the condition and demeanor of a claimant during the hearing, the ALJ is not precluded from considering the Plaintiff's appearance and demeanor at the hearing as long as it is not the sole consideration for a credibility finding.[36]  The ALJ did not solely rely upon his observations of Plaintiff's appearance and demeanor at the hearing but rather also fully considered the medical records and medical opinions, Plaintiff's medical treatment and his activities of daily living.  As such, because the ALJ considered all of the evidence of record, the fact that the ALJ also noted Plaintiff's appearance and demeanor at the hearing was not improper and does not rise to the level of reversible error.

Plaintiff also contends that the ALJ failed to accord weight to the lay testimony of Plaintiff's father (R. 102-03, 112-27) and Plaintiff's former boss. (R. 226.)   Although the ALJ did not specifically address this lay testimony, there was no error in failing to do so. The testimony of Plaintiff's father's was also inconsistent with the medical evidence of record and essentially corroborated Plaintiff's testimony regarding his alleged severe limitations.  As such, the testimony of Plaintiff's father was cumulative to Plaintiff's testimony.  Where as here, the ALJ makes a specific credibility finding as to the claimant, the ALJ is not required to make a comment on the cumulative, corroborative testimony of a family member such as Plaintiff's father. Moreover, Plaintiff's father

---

[36] See Macia v. Bowen, 829 F.2d 1009, 1011 (11th Cir. 1987.)

provided some testimony that was not supportive of Plaintiff's claims of disabling pain. For example, Plaintiff's father testified that Plaintiff cares for horses 3-4 hours per day and plays video games for 3-4 hours per day, both of which support the ALJ's finding that Plaintiff could perform simple, low stress unskilled work.

Likewise, the ALJ did not err because he failed to discuss in his decision the statement of Plaintiff's former boss regarding Plaintiff's panic attacks. (R. 226.)  The statement from Plaintiff's former boss was from August 2004, eight months prior to April 2005, the date Plaintiff alleges his disability began. (R. 24, 89.)   Moreover, Plaintiff's former boss terminated Plaintiff's employment because Plaintiff had a panic attack while on scaffolding – 26 feet above existing concrete not because of other limitations.  This limitation is fully consistent with the ALJ's RFC determination that Plaintiff should avoid climbing, hazards, heights and ladders.

Accordingly, for all of these reasons, the Court concludes that substantial evidence supports the ALJ's finding that Plaintiff was not entirely credible.

**E.    The ALJ's RFC finding is supported by substantial evidence**

Lastly, Plaintiff argues that the ALJ's RFC determination was improper.  An RFC assessment "is the adjudicator's ultimate finding of 'what you can still do despite your limitations" and is based upon all of the relevant evidence.[37]  As discussed above, the ALJ considered all of the record evidence when determining Plaintiff's RFC, and he properly evaluated the opinions of Dr. Phillips and Dr. Poetter as well as Plaintiff's testimony.  Simply because Plaintiff does not agree with the limitations the ALJ included

_____

[37] SSR 96-5p .

in his RFC finding does not mean the ALJ improperly determined Plaintiff's RFC.
Accordingly, the Court concludes that the ALJ properly determined Plaintiff's RFC and
the ALJ's finding regarding Plaintiff's RFC is supported by substantial record
evidence.[38]

## V.  CONCLUSION

In view of the foregoing, the decision of the Commissioner is due to be
**AFFIRMED** under sentence four of 42 U.S.C. § 405(g).  The Clerk is directed to enter
final judgment in favor of the Commissioner consistent with this Order and to close the
file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on March 15, 2010.

GARY R. JONES
United States Magistrate Judge


Copies to:
    All Counsel

---

[38] Based on this conclusion, the Court need not address Plaintiff's argument that the ALJ's step 5 findings are necessarily unsupported by the evidence because they are based upon the "deficient RFC findings."